IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADA RAMOS, )<br>)<br>Claimant, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of the U.S. Social )<br>Security Administration, )<br>)<br>Defendant. )<br>) | No. 16 CV 9378<br><br>Magistrate Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Ada Ramos ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) and 138(c)(3). For the reasons set forth below, Claimant's motion for summary judgment [26] is granted, and the Commissioner's motion for summary judgment [34] is denied.

I. Background

A. Procedural History

Claimant applied for Supplemental Security Income ("SSI") on May 22, 2012 alleging an onset of disability of May 1, 2012 due to depression. (R. 143.) Claimant's

application was denied initially and on reconsideration. (R. 55, 64.) She requested a hearing before an ALJ, which was held on February 27, 2015. (R. 12-28.) On April 23, 2015, the ALJ issued a written decision finding that Claimant was not disabled. (R. 8-11.) On July 29, 2016, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 727-34); *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). This action followed.

## B. Medical Evidence

### 1. Relevant Medical Records

Evidence before the ALJ dates back to April of 2012. (R. 268.) An initial intake report from Erie Humboldt Park Health Center with Dr. Omobolaji Campbell-Yesufu states that Claimant was diagnosed with HIV in 2004. (*Id.*) Claimant reported complete adherence to her antiretrovirals since she started them in 2009. (*Id.*) She indicated that both her and her daughter suffer from depression and are both on anti-depressant medications. (*Id.*) Claimant also reported a history of diabetes mellitus, hypertension, and hyperlipidemia. (*Id.*) Claimant was then referred to a social worker at Erie Humboldt Park Health Center, whom she saw six times over the course of six months. (R. 361, 366, 375-78.) Claimant continued treatment with Dr. Campbell-Yesufu through October of 2012. (R. 358, 364, 384, 386-87, 894.) Dr. Campbell-Yesufu noted her continuing depression, complaints of short term memory loss; and stated that Claimant needed psychiatric follow up, which the Health Center could not provide. (*Id.*) Dr. Campbell-Yesufu referred her to the psychiatric clinic at St. Mary of Nazareth Hospital. (*Id.*)

Hector Torres, Psy.D., examined Claimant on June 29, 2012. (R. 229.) Dr. Torres reported that Claimant was positive and cooperative, but also stated that

Claimant reported frequent thoughts of death.  (R. 231.)  Further, Dr. Torres noted that her immediate memory was marginally poor, which he opined might be due to a difficulty with concentration related to symptoms of depression and/or anxiety.  (*Id.*)  He also documented a poor general knowledge, poor arithmetic skills, and an intellectual ability below average.  (*Id.*)  Claimant's statements showed the following severe symptoms: feelings of failure as a person, guilt, occasional inability to cry, feeling restless or agitated most of the time, difficulty sleeping, increased appetite, and lack of interest in sex.  (R. 232.)  Claimant's results indicated a high level of symptoms associated with depression, which Dr. Torres opined may significantly interfere with her life functioning and quality of life.  (*Id.*)  Claimant also indicated high levels of depression and despair, consistent with a significant risk for eventual suicide, which Dr. Torres stated required mental health assistance.  (*Id.*)

The Beck Anxiety Inventory ("BAI") indicated the following severe symptoms: inability to relax, fear of the worst, terror, nervousness, fear of losing control, difficulty breathing, fear of dying, and generalized fear.  (R. 232.)  Dr. Torres opined that Claimant's anxiety may significantly interfere with information-processing functions and result in poorly planned responses to environmental pressures.  (R. 233.)

The Symptom Check List 90 Revised ("SCL-90R") revealed that Claimant was in the clinical range for her symptoms of somatization, obsessive-compulsive, personal inadequacy, depression, anxiety, phobic anxiety, and psychoticism.  (R. 233.)  Dr. Torres noted that Claimant's anxiety and depression may intensify the experience of these symptoms.  (*Id.*)

The Structured Clinical Interview for DSM-IV ("SCID-I") led to the Axis I diagnoses of major depression, recurrent, moderate, chronic, and generalized anxiety disorder. (*Id.*) Dr. Torres noted that Claimant's coping mechanisms of withdrawing and hiding may worsen her symptoms. (R. 235.) Moreover, Dr. Torres opined that Claimant would have greater difficulty with complex tasks, and that she may be substantially limited in learning, following instructions, concentrating, and working in settings where such activities are required. (*Id.*)

Claimant began treatment with Dr. Ondrej Chudoba and Isidro Cardona, MED, at the Resurrection Behavioral Health Outpatient Clinic at Saint Mary of Nazareth Center in the Fall of 2012. (R. 418-435.) She underwent a psychosocial assessment with Mr. Cardona in September of 2012 and was diagnosed with major depressive disorder and given a GAF score of 45. (*Id.*) At this assessment, Mr. Cardona reported that Claimant had appropriate eye contact, was cooperative, and had appropriate affect, but also noted persistent thoughts, feeling lonely, a depressed and sad mood, loss of short term memory, poor ability/willingness for treatment, no insight/awareness of illness, difficultly falling and staying asleep, and a loss of appetite. (R. 422-23.) He further documented that Claimant was unable to understand her illness very well, and a psychiatric evaluation and group therapy/counseling were recommended. (R. 433-35.) Her depressive episodes were listed as being related to past trauma. (R. 434.)

Treatment notes from October of 2012 at the Resurrection Behavioral Health Outpatient Clinic confirm Claimant's Axis 1 diagnoses of major depressive disorder and generalized anxiety disorder, as well as a GAF score of 45. (R. 410.) She reported

4

depression, an inability to sleep, poor appetite, and being socially isolated; and she was prescribed Effexor. (R. 410-11.)

Claimant completed a second psychosocial assessment in March of 2013. (R. 564-73.) During this assessment, Claimant's GAF score was noted to be 41-50 with "serious symptoms". (*Id.*) She reported that she had been without her medication for two weeks due to being unable to keep her appointment with Dr. Chudoba. (*Id.*) Dr. Chudoba restarted her Effexor in April of 2013. (R. 576.) Mr. Cardona repeated the psychosocial assessment once the medication was restarted, where he again noted a GAF score of 41-50 with "serious symptoms," as well as major depressive disorder. (R. 577.)

In May of 2013, Mr. Cardona noted motor retardation, hesitant speech, fair attention, depressed mood, somatization, and an inability to stay asleep. (R. 471.) He recommended a psychiatric evaluation and continuing group therapy. (R. 475-76.) Dr. Chudoba reported in June of 2013 that Claimant was compliant with medication but continued to feel depressed and anxious. (R. 477.) Claimant also saw a neurologist regarding complaints of poor memory but was told it was a symptom of her depression. (*Id.*) In October of 2013 and June 2014, Claimant reported to Dr. Chudoba that she was still dysphoric, despite compliance with her medication. (R. 478.) Dr. Chudoba increased her medication, and Claimant reported that she was doing better since the increase. (*Id.*) Claimant continued to be treated at Erie Humboldt Park Health Center by a Santina Wheat, MD-MPH, who noted in September of 2014 that Claimant's mood and affect exhibited no depression, anxiety, or agitation. (R. 455.)

**2. Agency Physicians**

In September 2012, Margaret W. DiFonso, Psy.D., reviewed Claimant's medical history and found that Claimant had the severe impairments of affective disorders and anxiety disorders. (R. 59-61.) She also found that Claimant had understanding and memory limitations, specifically being moderately limited in the ability to understand and remember detailed instructions. (R. 59.) Dr. DiFonso also opined that Claimant was moderately limited in her ability to carry out detailed instructions. (*Id.*) Dr. DiFonso further stated that Claimant was moderately limited in her ability to interact appropriately with the general public, as well as in her ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.*) Dr. DiFonso noted that Dr. Torres' report was not supported by objective evidence, but she also found that Claimant's depression and anxiety moderately limited her ability to manage detailed tasks. (R. 60-61.) Further, Dr. DiFonso opined that Claimant's interpersonal skills are moderately limited by her social anxiety. (R. 59.)

R. Leon Jackson, PHD, confirmed Dr. DiFonso's opinions in April of 2013, and added that Claimant was moderately limited in her ability to maintain attention and concentration for extended periods. (R. 71.) He also noted that her cognitive and attentional skills were intact and adequate for simple one-two step and semi-skilled tasks. (R. 72.)

**C. Claimant's Testimony**

At the time of the hearing, Claimant was 40 years old and living with her mother and daughter. (R. 39, 41.) Claimant stated that she graduated from high school in Puerto Rico and has no relevant work history. (R. 39-40.) She testified that although she is physically capable of taking care of herself, she sometimes does not have the

6

willingness and is mentally not up to taking care of her grooming and personal hygiene. (R. 41-42.) She asserted that her mother helps her with cooking, cleaning, and grocery shopping, but that she can occasionally take care of her laundry, sweep floors, and make a sandwich. (*Id.*) Her usual day consists of small conversations with her mother and daughter, watching TV, and listening to music. (R. 43.) She also stated that she does not leave the house by herself because she cannot remember where to go, she does not feel safe, and she is scared of getting lost. (*Id.*)

Claimant also testified that she forgets to take her anti-depressant medication about twice a week, but that when she remembers to take her medication, it helps "just a little bit." (R. 44-45). When asked why she thought she could not work, Claimant testified that her depression causes her to cry, she does not remember things well, and that she cannot follow instructions or orders because she forgets and cannot memorize what she is told. (R. 46-47.)

**D. Vocational Expert Testimony**

Vocational Expert ("VE") Kari Seaver also appeared at the hearing. The ALJ asked the VE to consider an individual with a high school education and no past relevant job history. (R. 50.) The ALJ then asked if there would be jobs in the national and local economy that such an individual could perform if the individual could work at all exertional levels, was moderately limited in the ability to maintain concentration, persistence, or pace – and therefore, as a functional matter, would be limited to performing short, simple tasks involving only occasional interaction with the general public and would be unable to communicate effectively in English. (*Id.*) The VE

testified that such an individual could work as a handpacker, an assembler, or a sorter. (*Id.*)

The ALJ then asked the VE to consider the same individual but added that the individual also would be limited to brief, superficial interaction with the public, co-workers, and supervisors; would be limited to performing simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions with few, if any, workplace changes. (R. 51.) The VE testified that the same jobs she previously listed would still be available to an individual with those limitations. (*Id.*) The ALJ then asked the VE to add the limitation that the individual would be unable to consistently remember instructions and workplace procedures. (*Id.*) The VE testified that this limitation would eliminate all jobs. (R. 52.) The ALJ then asked the VE to replace the last limitation with an inability to accept instructions or respond to criticism from supervisors. (*Id.*) The VE testified that this would also preclude the individual from all work. (*Id.*) Claimant's attorney asked the VE to replace the last limitations with the limitation that the individual would miss work at least two days a month due to an inability to travel alone. (R. 53.) The VE again testified that this would preclude the individual from all work. (*Id.*)

## II. Analysis

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for SSI or DIB, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment,

9

(3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here the ALJ applied the five-step process to reach his decision denying Claimant's application for benefits. At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the application date of May 22, 2102. (R. 17.) At step two, the ALJ determined that Claimant had the severe impairments of affective disorder variously diagnosed as adjustment disorder with mixed depression and anxiety or major depressive disorder, and generalized anxiety disorder. (*Id.*) The ALJ found that Claimant's HIV, diabetes mellitus, hypertension, obesity, and musculoskeletal pain were non-severe. (R. 17-18.) At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (R. 18.)

The ALJ went on to assess Claimant's residual functional capacity ("RFC"), finding Claimant had the RFC to perform a full range of work at all exertional levels, but she is moderately limited in her ability to maintain concentration, persistence or pace, and therefore is limited to performing simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-

related decisions, and few, if any, workplace changes. (R. 20.) She can have only brief, superficial interaction with co-workers, supervisors, or the public. (*Id.*) The ALJ determined at step four that Claimant has no past relevant work. (R. at 23.) Finally, the ALJ found that Claimant could perform work in the national economy, including in the positions of hand packer, assembler, or sorter. (*Id.*)

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. Claimant asserts that the ALJ erred in evaluating the opinion of the examining psychologist; that the ALJ improperly evaluated Claimant's mental RFC; and that the ALJ erred in evaluating Claimant's subjective allegations. We address Claimant's argument below, ultimately finding that the ALJ's opinion should be remanded.

### C. The ALJ's Improperly Evaluated the Opinion of Claimant's Examining Psychiatrist.

Claimant contends the ALJ improperly gave "little weight" to the examining psychiatrist. She argues the ALJ erroneously found the examining opinion to be based heavily on Claimant's subjective allegations. The Court agrees.

"An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). Examining physician opinions are normally afforded more weight than non-examining sources. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.") Here, the ALJ gave non-examining sources

11

greater weight without providing substantial evidence in the record to build a logical bridge explaining his reasoning.

The ALJ gave the state agency non-examining physicians "good weight," due to their consistency with the overall record. (R. 22.) The ALJ then afforded Dr. Torres' opinion "little weight," in part because he examined Claimant for the first time twelve days before the assessment, and in part because he found the opinions to be inconsistent with the record and based heavily on Claimant's subjective allegations. (*Id.*) The length of treatment time is a factor for treating physicians, however both Claimant and the Commissioner refer to Dr. Torres as an examining physician.[1] Therefore, the ALJ must build a logical bridge, citing to medical evidence in the record, that supports his decision to give the non-examining sources greater weight than an examining source. *See Gudgel,* 345 F.3d at 470; *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017).

The ALJ discredited Dr. Torres' opinion, finding it based heavily on Claimant's subjective allegations. (R. 22.) While an ALJ may give less weight to an examining opinion that appears to rely heavily on the claimant's subjective complaints, the ALJ will give more weight to an opinion presenting objective, relevant medical evidence to support the opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion. The better explanation a source provides for an opinion the more weight we will give that opinion.") Although Dr.

---

[1] Although Claimant refers to Dr. Torres as an examining physician, she also uses treating physician case law to support her arguments. The Court does not address these arguments, as both sides refer to Dr. Torres as an examining source, and the record indicates that Dr. Torres examined Claimant only once. (R. 228-35.)

12

Torres' opinion does rely at least in part on Claimant's self-reported symptoms, Dr. Torres also used five different psychological and cognitive evaluations in developing his opinion. (R. 232-35.)

The Commissioner argues that these evaluations are also based on subjective complaints, with the exception of the cognitive evaluation. The Commissioner also argues that the cognitive evaluation results are inconsistent with Dr. Torres' evaluation of the Claimant, and therefore even the one objective test cannot be relied upon. However, Dr. Torres also opined that these inconsistent results may be due to an inability to concentrate, pay attention, and focus given Claimant's symptoms of depression and anxiety. Dr. Torres also noted Claimant's difficulty with immediate memory, concentration, and focus through objective testing, not solely based on Claimant's complaints. Moreover, although Claimant does not raise the issue, the Court notes that psychological assessments are, by their nature, based on a patient's self-report of symptoms or feelings. *Aurand v. Colvin*, 654 Fed. Appx. 831, 837 (7th Cir. 2016.) ("But a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning; there is no blood test for bipolar disorder.") The ALJ may not dismiss Dr. Torres' opinion because it relies heavily on Claimant's subjective complaints, or because of a lack of objective evidence in the record. *Id.* ("Thus it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms.")

The ALJ also fails to point to evidence in the record that contradicts Dr. Torres' findings, he simply states that Dr. Torres' opinions on symptoms and limitations are not

13

documented anywhere else in the record. (R. 22.) Dr. Torres' findings of immediate memory problems are corroborated by notes from her primary care physician at Erie Humboldt Park Health Center. (R. 376, 384.) His findings of depression and anxiety are consistent with progress notes from Erie Humboldt Park Center and Resurrection Behavior Clinic, which not only documents major depressive disorder and generalized anxiety disorder, but also notes a GAF score between 41-50 on at least two separate occasions. (R. 268-71, 364, 366, 377, 394, 410-11, 418-20, 471, 477-78, 708.) A GAF score of 41-50 indicates "serious symptoms" such as suicidal ideation, severe obsessional rituals, or a serious impairment in social or occupational functioning. *Simpson v. Berryhill*, No. 17 CV 2299, 2018 U.S. Dist. LEXIS 82049 at *2 n.4 (N.D. Ill. May 16, 2018.) The ALJ is not required to give weight to the GAF scores given to Claimant. *See Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). However, such scores do indicate that Claimant's reported symptoms of depression and Dr. Torres' opinion of her functional limitations are substantiated elsewhere in the record. Accordingly, the ALJ has failed to build a logical bridge connecting the medical record to his reasoning for discrediting Dr. Torres' opinion, as he has not addressed evidence that explains how the opinion is not documented in the record. On remand, the ALJ must clearly explain how his decision to disregard Dr. Torres' opinions complies with the analysis required under the Act.

**D.    Claimant's Subjective Symptom Evaluation Requires Remand.**

Claimant takes issue with the ALJ's evaluation of Claimant's subjective complaints.[2] The Courts give ALJ credibility determinations deference based on the

---

[2] Claimant argues that SSR 16-3P, 2016 SSR LEXIS 4 applies rather than SSR 96-7p, 1996 SR LEXIS 4. She asserts that SSR 16-3p is appropriate in this case because it merely clarifies the existing law rather

14

ALJ's ability to hear, see, and assess witnesses. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). An ALJ's credibility determination will only be overturned if it is patently wrong. *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ must "explain [his] decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

The ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010). However, the ALJ need not mention every piece of evidence so long as he builds a logical bridge from the evidence to his conclusion. *Id.* In making a credibility determination, the ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).

Claimant argues that the ALJ took a "sound bite" approach to evaluating her subjective complaints by only identifying pieces of evidence that support the ALJ's decision and ignoring related evidence that undermines it. *See Scrogham v. Colvin,* 765 F.3d 685, 698 (7th Cir. 2014). The ALJ's assessment focuses on Claimant's conservative treatment, her lack of hospitalizations, and her occasional statements that

---

than changes the law. Claimant further contends that because SSR 16-3p applies, any case law regarding credibility standards, including the "patently wrong" standard, does not apply to this case. However, the Social Security Administration recently clarified that Courts should only apply SSR 16-3p to determinations made on or after March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued this decision on February 27, 2015, over a year before the effective date of the new regulation. Moreover, SSR 16-3p is not "patently inconsistent" with SSR 96-7p. *Shered v. Berryhill*, 16 CV 50382, 2018 U.S. Dist. LEXIS 70972, 2018 WL 1993393, at *5 (N.D. Ill. April 27, 2018.) (internal quotations omitted).

her medication was helping.  The ALJ also states that she was stable on her medication.  However, the ALJ glosses over the fact that Claimant continued to complain of dysphoria, memory problems, mood instability, inattention, difficulty sleeping, anxiety, poor self-esteem, and depression throughout treatment notes.

The ALJ states that "[w]hile she continued to complain of dysphoria, a state of disquiet or restlessness, over the course of the next year, clinical findings during that period note reported issues with attention and concentration, but no other significantly limiting symptoms."  (R. 22.)  The ALJ focuses on the period from March of 2013 through March of 2014 for this statement that Claimant has had no significantly limiting symptoms over the course of a year.  The ALJ notes only the symptoms of dysphoria and issues with attention and concentration, while ignoring multiple symptoms that Claimant reported to her doctors during that time.  The ALJ does not discuss the progress note from April of 2013, which notes a GAF score of 41-50, motor retardation, hesitant speech, fair attention, depressed mood, and somatization.  (R. 708-714.)  In treatment notes from May of 2013, Claimant reported depression, anxiety, poor self-esteem, difficulty sleeping, and hesitant speech.  (R. 471-78.)

The ALJ also states that Claimant was stable since a medication increase.  (R. 22, 478.)  However, Claimant was frequently noted to be stable or compliant with medication while still exhibiting symptoms of depression and anxiety.  (R. 384, 409-20, 471-78, 572, 584, 593, 607, 708-11.)   The ALJ also points to a treatment note from the primary care physician in September of 2014 where Claimant exhibited no symptoms of depression, anxiety, or agitation during a visit for her HIV and a PAP smear.  (R. 455.)  However, Claimant was attending regular group therapy and receiving treatment from

mental health professionals at St. Mary's Hospital at this time; and it is logical that Claimant may not have chosen to discuss her mental health with her primary care physician during her regular HIV follow up and yearly PAP smear. Moreover, one treatment note showing no symptoms is not enough to show overall improvement. The Seventh Circuit has found that mental impairments may have periods of improvement followed by periods of deterioration. See, e.g., *Punzio v. Astrue*, 630 F.3d 704, 710-11 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.").

Accordingly, the Court finds that the ALJ was selective in his discussion of Claimant's medical records and did not properly consider the entire case record. On remand, the ALJ must clearly explain the subjective symptoms finding and set forth specific reasons for that finding.

**E.     The ALJ Properly Considered Memory Limitations and Complied with *O'Connor-Spinner*.**

Claimant also argues that the ALJ failed to properly consider her memory impairments in the RFC, as well as failed to comply with *O'Connor-Spinner v. Astrue*, 627 F.3d 616 (7th Cir. 2010), in his RFC determination. The ALJ discussed Claimant's reports of having difficulty remembering things, sometimes forgetting to take her medications, and general difficulties with memory. (R. 21.) He used reports from the state agency physicians, Claimant's testimony, as well as other treatment notes to determine that Claimant had a moderate limitation in her ability to maintain concentration persistence, or pace. (R. 18-19, 21-22.) The ALJ included this limitation in the RFC, finding that Claimant "therefore is limited to performing simple, routine,

17

repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and few, if any, workplace changes." (R. 20.) Such a limitation accommodates Claimant's memory impairment. Therefore, we find that the ALJ properly accounted for Claimant's memory limitations in the RFC by including limitations in concentration, persistence, or pace.

Claimant also contends that the ALJ violated *O'Connor-Spinner v. Astrue* by limiting Claimant to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and few, if any, workplace changes. 627 F.3d 616 (7th Cir. 2010). In *O'Connor-Spinner*, the Seventh Circuit found that limiting claimants to "simple, repetitive tasks" is on its own not enough to encompass moderate limitations in concentration, persistence, or pace. 627 F.3d at 620. Significantly, *O'Connor-Spinner* focuses on cases in which the ALJ fails to include the terms "concentration, persistence and pace" in either the RFC or in the hypothetical to the VE. *Id.* at 619.

Here, the ALJ stated in both the RFC and in the hypothetical to the VE that Claimant would be moderately limited in concentration, persistence, or pace, and therefore required the limitations that followed. (R. 19-20, 50.) This complies with *O'Connor-Spinner*, wherein the Seventh Circuit stated that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 620-21. The ALJ did so here by noting out in both the RFC and in the hypothetical to the VE that Claimant had moderate limitations in concentration,

persistence, or pace that required functional limitations.  This complies with what the Seventh Circuit laid out in *O'Connor Spinner*, as well as the other cases cited by Claimant.  Accordingly, the Court finds that the ALJ complied with the requirements; and on remand, the ALJ is again reminded to consider these requirements when determining Claimant's RFC.

### III. Conclusion

For the foregoing reasons, Claimant's motion to reverse the final decision of the Commissioner [26] is granted, the Commissioner's Motion for Summary Judgment [34] is denied, and the decision of the ALJ is remanded to the Social Security Administration for proceedings consistent with this Opinion.

**ENTERED:**

_____

**Michael T. Mason**
**United States Magistrate Judge**

**Dated: August 22, 2018**